1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  DANIELA ROBINSON,                    No.  12-cv-01373-JAM-AC

12          Plaintiff,            **MOTION DENYING
                                  DEFENDANT/COUNTERCLAIMANT'S**
13      v.                        **MOTION FOR SUMMARY JUDGMENT**

14  METROPOLITAN LIFE INSURANCE
    COMPANY,
15
            Defendant.
16
    METROPOLITAN LIFE INSURANCE
17  COMPANY,

18          Counterclaimant,

19      v.

20  DANIELA ROBINSON,

21          Counterdefendant.

22      Presently before the Court is Defendant/Counterclaimant

23  Metropolitan Life Insurance Company's ("Defendant") Motion for

24  Summary Judgment (Doc. #16).[1]  Plaintiff/Counterdefendant Daniela

25  Robinson ("Plaintiff") opposes the motion (Doc. #19).

26  _____

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  originally scheduled for March 6, 2013.

1                              BACKGROUND

2          This matter concerns the payment of disability benefits

3    under a long term disability plan sponsored by Catholic

4    Healthcare West (the "CHW Plan").  Defendant is the plan

5    administrator.  Plaintiff participated in the CHW Plan as a

6    nurse employee at St. Joseph's Medical Center, a subsidiary or

7    division of Catholic Healthcare West, now known as Dignity

8    Health ("CHW").  Plaintiff stopped working on June 18, 2007.  On

9    April 18, 2008 she submitted a claim to Defendant for benefits

10   under the CHW Plan.  Defendant approved the claim and paid

11   benefits for over two years.

12         The CHW Plan became effective January 1, 2002 and continued

13   through the relevant time period.  The CHW Plan contains the

14   following definition of disability:

15       "Disabled" or "Disability" means that, due to Sickness or
         as a direct result of accidental injury:
16

17              •   You are receiving Appropriate Care and Treatment
                    and complying with the requirements of such
18                  treatment; and
                •   You are unable to earn:
19                      •   During the [180 day] Elimination Period
                            [during which no benefits are paid] and the
20                          next 24 months of Sickness or accidental
                            injury, more than 80% of Your Predisability
21                          Earnings . . . .

22   Broadwater Decl. (Doc. 16-1) Ex. A, Administrative Record

23   (hereinafter cited as "Admin."), at 23.  The 180 day elimination

24   period is the 180 days after the onset of disability.  Admin.

25   21.  Unless a claimant is continuously disabled for 180 days, he

26   or she will not receive payments under the CHW Plan.

27   ///

28
                                     2

1    Plaintiff's claim was initially approved in April 2008 with

2  an initial payment date of December 16, 2007.  Admin. 769.  This

3  is because under the CHW Plan, the elimination period ran from

4  her last day of work in June 2007 through December 2007.

5    On October 15, 2007, CHW elected pursuant to 26 U.S.C.

6  § 410(d) ("§ 410(d)") to treat the CHW Plan as governed by and

7  subject to the provisions of the Employee Retirement Income

8  Security Act of 1974 ("ERISA").  The election was attached to

9  CHW's Internal Revenue Service ("IRS") Form 5500 for the 2006

10  plan year.

11    Plaintiff's complaint (Doc. #1) contains two state law

12  claims against Defendant for 1) Breach of the Duty of Good Faith

13  and Fair Dealing, and 2) Breach of Contract.  Defendant answered

14  the complaint and included counterclaims for 1) Equitable Relief

15  Under ERISA, 2) Declaratory Relief, 3) and Unjust Enrichment.

16  Defendant's motion for summary judgment only references

17  Plaintiff's claims, not Defendant's counterclaims.  Accordingly,

18  the only issue presently before the Court is whether or not

19  Defendant is entitled to judgment on Plaintiff's affirmative

20  claims.  This Court has jurisdiction pursuant to either 28

21  U.S.C. § 1331 if Defendant is correct that ERISA preempts

22  Plaintiff's state law claims or 28 U.S.C. § 1332 based on the

23  diversity of citizenship of the parties.

24

25                            OPINION

26  Legal Standard

27    Summary judgment is proper "if the pleadings, depositions,

28  answers to interrogatories, and admissions on file, together

3

1    with affidavits, if any, show that there is no genuine issue of

2    material fact and that the moving party is entitled to judgment

3    as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of

4    summary judgment "is to isolate and dispose of factually

5    unsupported claims or defenses."  Celotex v. Catrett, 477 U.S.

6    317, 323-324 (1986).

7         The moving party bears the initial burden of demonstrating

8    the absence of a genuine issue of material fact for trial.

9    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

10   If the moving party meets its burden, the burden of production

11   then shifts so that "the non-moving party must set forth, by

12   affidavit or as otherwise provided in Rule 56, 'specific facts

13   showing that there is a genuine issue for trial.'"  T.W.

14   Electrical Services, Inc. v. Pacific Electric Contractors Ass'n,

15   809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P.

16   56(e)).  The Court must view the facts and draw inferences in

17   the manner most favorable to the non-moving party.  United

18   States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[M]ere

19   disagreement or bald assertion that a genuine issue of material

20   fact exists will not preclude the grant of summary judgment".

21   Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

22        The mere existence of a scintilla of evidence in support of

23   the non-moving party's position is insufficient: "There must be

24   evidence on which the jury could reasonably find for [the non-

25   moving party]."  Anderson, 477 U.S. at 252.  This Court thus

26   applies to either a defendant's or plaintiff's motion for

27   summary judgment the same standard as for a motion for directed

28   verdict, which is "whether the evidence presents a sufficient

4

1  disagreement to require submission to a jury or whether it is so

2  one-sided that one party must prevail as a matter of law."  Id.

3  Discussion

4          1.   Applicability of the CHW Plan's 26 U.S.C.
               § 410(d) Waiver
5

6      For purposes of the present motion only, the parties agree

7  that the CHW Plan is a "church plan" as defined by 29 U.S.C.

8  § 1002(33)(A), and that church plans are generally exempt from

9  ERISA pursuant to 29 U.S.C. § 1003(b)(2).  The parties also

10 agree that under certain circumstances, an election made

11 pursuant to 26 U.S.C. § 410(d) permits a church plan to opt in

12 to the ERISA regulatory scheme.  It is undisputed that such an

13 election would operate along with ERISA's broad preemption

14 provision to bar state law claims such as Plaintiff's if they

15 relate to the CHW Plan.  See Ingersoll-Rand Co. v. McClendon,

16 498 U.S. 133, 139 (1990).

17     Defendant argues in support of this motion that the CHW

18 Plan operates under a valid election, that the election applies

19 to Plaintiff's benefits, and therefore ERISA is the only

20 authority that applies to this dispute.  Plaintiff, on the other

21 hand, argues that a church plan can only make an election

22 pursuant to § 410(d) if it is a pension plan, not a welfare

23 benefit plan like the CHW Plan at issue in this case.  Plaintiff

24 does concede that if the § 410(d) election is valid and

25 applicable to her claim, then ERISA preempts her state law

26 claims.  In order to determine what law applies to this motion,

27 the Court must first determine if a welfare benefit plan can

28 make an election pursuant to 26 U.S.C. § 410(d), and if so,

1  whether or not the CHW Plan made a valid election such that

2  ERISA applies to the parties' claims.

3              a.    Applicability of § 410(d) Elections to
                     Welfare Benefit Plans
4

5       Defendant contends that any church plan, whether it is

6  welfare, pension, or both, may elect to be governed by ERISA by

7  following the procedure in 26 U.S.C. § 410(d).  Defendant relies

8  on one case from the District of Maine, Catholic Charities of

9  Me., Inc. v. City of Portland, 304 F. Supp. 2d 77 (D. Me. 2004),

10 and a plain reading of the applicable statutes to support its

11 position.  Plaintiff responds that the Catholic Charities case

12 was wrongly decided, that the case is only persuasive authority,

13 and § 410(d) should be correctly read as only applying to

14 pension plans.  Plaintiff therefore contends that 29 U.S.C.

15 § 1003(b)(3) only authorizes a § 410(d) election for pension

16 plans, even if the statute does not explicitly limit the

17 election.

18      Neither the Ninth Circuit nor the Supreme Court has decided

19 whether or not a church welfare benefit plan can make a § 410(d)

20 election.  Accordingly, this is a matter of first impression

21 within this Circuit.  As the Plaintiff correctly points out, the

22 only authority squarely on point consists of the Catholic

23 Charities decision, which is not binding on this Court, and the

24 statutory text.  See Boyd v. Benton Cnty., 374 F.3d 773, 781

25 (9th Cir. 2004) (holding that only decisions of the Supreme

26 Court and Ninth Circuit constitute binding authority).

27      In construing the provisions of a statute, a court must

28 first look to the statute itself to see whether its language has

                                  6

1    a plain meaning.  _Satterfield v. Simon & Schuster, Inc._, 569

2    F.3d 946, 951 (9th Cir. 2009) (citing _McDonald v. Sun Oil Co._,

3    548 F.3d 774, 780 (9th Cir. 2008)).  If the statutory language

4    is unambiguous, the inquiry ends and the court applies the

5    statute as it is written.  _Id._

6         29 U.S.C. § 1003(b)(2) is located within the "General

7    Provisions" subtitle of ERISA.  It states, "The provisions of

8    this subchapter shall not apply to any employee benefit plan if

9    . . . such plan is a church plan (as defined in section 1002(33)

10   of this title) with respect to which no election has been made

11   under section 410(d) of Title 26 . . . ."  29 U.S.C.

12   § 1003(b)(2).  That section is certainly plain – church plans

13   are not governed by ERISA unless they make a § 410(d) election.

14   26 U.S.C. § 410(d) is located within a part of the Internal

15   Revenue Code ("IRC") titled, "Pension, Profit-Sharing, Stock

16   Bonus Plans, Etc."  That section provides, "If the church . . .

17   makes an election under this subsection [pursuant to

18   regulation], then the provisions of this title relating to

19   participation, vesting, funding, etc. . . . shall apply to such

20   church plan as if such provisions did not contain an exclusion

21   for church plans."  There are two possible points of ambiguity

22   in § 410(d).  First, it is located within a section of the IRC

23   that seems to apply only to deferred compensation plans.

24   Second, it contains an enumeration concluded by a necessarily

25   ambiguous "etc."  It is these potential ambiguities that

26   Plaintiff relies on to argue that Congress only wished to allow

27   pension plans to make a § 410(d) election.

28

1      This Court is not persuaded by Plaintiff's argument.
2  First, the IRC defines exactly what a church plan is for its
3  purposes.  A church plan is one whose "principal purpose or
4  function . . . is the administration or funding of a plan or
5  program for the provision of retirement benefit <u>or welfare</u>
6  <u>benefits, or both</u> . . . ."  26 U.S.C. § 414(e)(3)(a) (emphasis
7  added).  Section 410(d) is only ambiguous when analyzed without
8  the definitions also provided in the IRC.  The relevant
9  regulations adopted by the Treasury Department support this
10  interpretation.  26 C.F.R. § 1.410(d)-1 states that any church
11  plan can make a § 410(d) election.  The regulation refers to the
12  definition in 26 U.S.C. § 414(e), which includes welfare benefit
13  plans.  Second, the operative statutory section for the present
14  motion is 26 U.S.C. § 1003(b)(2), which contains no ambiguity.
15  That section simply states that any church employee benefit plan
16  that chooses to make a § 410(d) election is thereafter governed
17  by ERISA.  Since ERISA clearly applies to pension and welfare
18  benefit plans, there is no principled basis for excluding
19  welfare plans from § 1003(b)(2).  The Court is required to
20  presume that Congress meant what it said in § 1003(b)(2), and it
21  is improper to seek out ambiguities in order to change the plain
22  meaning of a statute.  <u>Satterfield</u>, 569 F.3d at 951.

23      Plaintiff's remaining arguments are equally unpersuasive.
24  Plaintiff argues that Congress only made the exception for
25  pension plans because it wanted them to be able to opt-in to
26  oversight by the Secretary of the Treasury and be eligible for
27  federal pension insurance.  Plaintiff contends that no such
28  exception is necessary for welfare plans because the states

1  generally regulate the insurance companies that provide employee

2  welfare benefits.  Plaintiff's argument ignores the whole point

3  of ERISA, which was to provide a comprehensive federal scheme to

4  regulate employee benefit plans, including welfare benefit

5  plans.  If Plaintiff's position were correct, then Congress

6  would have only included pension plans in ERISA generally, and

7  no provisions at all related to welfare benefit plans.

8      For the foregoing reasons, it is the finding of this Court

9  that ERISA applies to church welfare benefit plans that make a

10 valid election pursuant to 26 U.S.C. § 410(d).

11                  b.   Validity of the CHW Plans § 410(d) Election

12      Having determined that a church welfare benefit plan can

13 make an election under § 410(d) to opt in to ERISA's regulatory

14 scheme, the next issue is whether or not the CHW Plan made such

15 an election.  Defendant argues that the CHW Plan made a § 410(d)

16 election by attaching an "ERISA Election" to its 5500 Form for

17 plan year 2006.  Defendant argues that the election is

18 irrevocable under 26 U.S.C. § 410(d), and it is therefore still

19 in effect.  Plaintiff responds, citing 26 C.F.R. § 1.410(d)-

20 1(c)(2), that the election is properly made by attaching it to a

21 form required under 26 U.S.C. § 6058, but the CHW Plan made the

22 election improperly through attachment to a Form 5500.

23 Plaintiff alternatively argues that even if an election was

24 made, it was deficient because the CHW Plan, by its terms, is

25 subject to change and the plan is therefore revocable in

26 violation of § 410(d).

27      Plaintiff's position relies on the lack of an attachment to

28 a Form 6058, but it is impossible for the CHW Plan to file a

                                9

1   Form 6058 because such a form does not exist.  The proper form

2   filed pursuant to the requirements in 26 U.S.C. § 6058 is

3   Internal Revenue Service Form 5500.  26 C.F.R. § 301.6058-1(a).

4   The unrebutted evidence before the Court is that the CHW Plan

5   made a § 410(d) election through attachment to its 2006 plan

6   year Form 5500 filing.  Zelenak Decl. ¶ 4, Ex. A.  Plaintiff's

7   argument related to the CHW Plan's ability to change at any time

8   is also unavailing.  Plaintiff takes the position that once an

9   election is made under § 410(d), plan terms are irrevocable and

10  unable to change.  Plaintiff cites no authority for this

11  position, and the clear language of § 410(d) indicates that only

12  the election itself is irrevocable.  The section does not

13  mention and therefore does not apply to a plan's terms.

14      Based on the unrebutted evidence before the Court, there is

15  no genuine dispute as to whether or not the CHW Plan made a

16  § 410(d) election.  The election attached to the 2006 Form 5500

17  satisfies 26 U.S.C. § 410(d) and the CHW Plan is therefore

18  governed by ERISA.

19          c.   Applicability of § 410(d) Election to
                 Plaintiff's Claims
20

21      Finally, Plaintiff argues that the § 410(d) election does

22  not apply to her claim because it arose before the election was

23  made.  It is undisputed that Plaintiff became disabled on June

24  19, 2007, and that the § 410(d) election was executed on October

25  15, 2007.  The parties agree that under the terms of the plan,

26  Plaintiff was not entitled to benefits until a 180 exclusion

27  period expired on December 16, 2007.  Defendant does not argue

28  that a § 410(d) election applies retroactively, but argues that

10

1  the election applies because Plaintiff was not due any payments

2  until after the election took effect.  Defendant takes the

3  position that in order for any rights to accrue under the CHW

4  Plan, Plaintiff had to be receiving benefit payments.  Plaintiff

5  takes the position that the claim arose, at the latest, when

6  Plaintiff became disabled on June 19, 2007.  Plaintiff argues

7  that it would be unfair to allow Defendant to change the law

8  applicable to her claim during the elimination period by filing

9  an election.

10      Plaintiff relies on Geter v. St. Joseph Healthcare Sys.,

11  Inc., 575 F. Supp. 2d 1244 (D.N.M. 2008), to support her

12  position.  Geter dealt with a § 410(d) election that was made

13  after the claimant was receiving benefits.  Id. at 1249.  The

14  court rejected the plan's argument that the § 410(d) election

15  applied, even though the plan was permitted to retroactively

16  file tax forms for years prior to the claimant's disability.

17  Id. at 1251.  The Geter court reasoned that the plain language

18  of the applicable statute, 29 U.S.C. § 1003, does not allow

19  retroactive ERISA preemption.  Id. at 1250.  Further, the court

20  pointed out that permitting such preemption would be anomalous

21  because the plan would benefit from ERISA's preemption provision

22  for years that it was not compelled to comply with any of

23  ERISA's mandatory reporting, disclosure, and fiduciary

24  requirements.  Id.

25      This Court agrees with the Geter court's holding.  The

26  plain text of 29 U.S.C. § 1003(b)(2) states that a church plan

27  is exempt from ERISA until it makes a § 410(d) election.  There

28  is no reference to retroactive ERISA coverage, and no basis for

11

1  inferring it.  Disability claims arising before the election are

2  therefore not governed by ERISA, and claims arising after the

3  election are.  The remaining issue for purposes of the present

4  summary judgment motion is therefore whether or not Plaintiff's

5  claim began when she became disabled or when she began to

6  receive benefit payments at the end of the 180 day elimination

7  period.

8       Plaintiff relies heavily on the terms of the CHW Plan

9  itself to support its position.  Plaintiff points out that the

10 CHW Plan defines "disability" to include the elimination period.

11 Admin. 23.  Plaintiff also points out that once a person is

12 disabled, their benefits under the CHW Plan remain unchanged

13 even if the insurance policy ends or is amended.  Admin. 36, 41.

14 Based on the language of the Plan, Plaintiff essentially argues

15 there is a claim that accrues when the insured becomes disabled

16 and a separate plan benefit that begins to accrue at the end of

17 the elimination period.  While benefits require a valid claim, a

18 valid claim does not necessarily lead to benefit payments

19 because the 180 day elimination period may not be satisfied.

20 Other terms of the CHW Plan support Plaintiff's position.  For

21 instance, an initial claim is generally supposed to be filed

22 within 90 days of a loss, not when a person becomes eligible to

23 receive benefits.  Admin. 47.  Legal suits related to the CHW

24 Plan are able to be filed as soon as 60 days of when the proof

25 of a claim is filed, not when benefits begin to accrue.  Admin.

26 48.

27      Defendant's position is "that the Election took effect

28 before [P]laintiff ever had a claim, because she had no claim

1  unless she was 'disabled' under the Plan for at least 180 days.

2  . . ." Reply, at 16.  That position, however, is not based on

3  any legal authority and it contradicts the terms of the CHW

4  Plan.  The CHW Plan clearly describes a situation where a claim

5  accrues at the point of disability, and further provides that

6  benefits begin to pay at the end of the 180 day elimination

7  period.  Disability under the CHW Plan includes the 180 day

8  elimination period.  Admin. 23 ("Disabled or Disability means

9  that, due to Sickness or as a direct result of accidental injury

10 . . . You are unable to earn during the Elimination Period and

11 the next 24 months of Sickness or accidental injury . . . .")

12 Based on the CHW Plan's definition of disability, it is clear

13 that disability occurs when the covered person is unable to

14 earn, not at the end of the elimination period.  The contention

15 that a § 410(d) election applies to a claim for which the

16 underlying disability has already started is inconsistent with

17 the terms of the plan that guarantee coverage once a person

18 becomes disabled, even if the policy expires or changes.  The

19 only operative date that the terms of the CHW Plan contemplate

20 for purposes of claim accrual is the date of onset of

21 disability.

22      Due to the lack of applicable legal authority and evidence

23 supporting Defendant's position that the § 410(d) election

24 should apply to Plaintiff's claim, judgment on this issue in

25 Defendant's favor is denied.  The remainder of Defendant's

26 motion assumes that ERISA is binding on Plaintiff's claim.

27 Since the Court has found otherwise, and Defendant has not

28 produced authority, evidence, or argument showing that it is

1 | entitled to judgment on Plaintiff's state law claims on their
2 | merits, the remainder of the motion is also denied.

3

4 | PAGE LIMIT SANCTIONS
5 | Defendant's Reply Brief (Doc. #23) is twelve pages long in
6 | violation of this Court's Order Re Page Limits (Doc. #5-2).
7 | Accordingly, Counsel for Defendant is ordered to pay a $100
8 | sanction ($50 per page) to the Court within ten days of the date
9 | of this Order.

10

11 | ORDER
12 | For the foregoing reasons Defendant's Motion for Summary
13 | Judgment is DENIED. Defendant is to pay a $100 sanction within
14 | ten days.

15 | IT IS SO ORDERED.
16 | Dated: March 27, 2013

17 | JOHN A. MENDEZ,
 | UNITED STATES DISTRICT JUDGE

18

19

14