1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   DANIELA ROBINSON,                     No.  12-cv-01373-JAM-AC

12            Plaintiff,              **MOTION DENYING
                                      DEFENDANT/COUNTERCLAIMANT'S**
13        v.                          **MOTION FOR SUMMARY JUDGMENT**

14   METROPOLITAN LIFE INSURANCE
     COMPANY,
15
              Defendant.
16
     METROPOLITAN LIFE INSURANCE
17   COMPANY,

18            Counterclaimant,

19        v.

20   DANIELA ROBINSON,

21            Counterdefendant.

22       Presently before the Court is Defendant/Counterclaimant

23   Metropolitan Life Insurance Company's ("Defendant") Motion for

24   Summary Judgment (Doc. #16).[1]  Plaintiff/Counterdefendant Daniela

25   Robinson ("Plaintiff") opposes the motion (Doc. #19).

26

27   _____
     [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   originally scheduled for March 6, 2013.

                                    1

1                              BACKGROUND

2       This matter concerns the payment of disability benefits

3   under a long term disability plan sponsored by Catholic

4   Healthcare West (the "CHW Plan").  Defendant is the plan

5   administrator.  Plaintiff participated in the CHW Plan as a

6   nurse employee at St. Joseph's Medical Center, a subsidiary or

7   division of Catholic Healthcare West, now known as Dignity

8   Health ("CHW").  Plaintiff stopped working on June 18, 2007.  On

9   April 18, 2008 she submitted a claim to Defendant for benefits

10  under the CHW Plan.  Defendant approved the claim and paid

11  benefits for over two years.

12      The CHW Plan became effective January 1, 2002 and continued

13  through the relevant time period.  The CHW Plan contains the

14  following definition of disability:

15      "Disabled" or "Disability" means that, due to Sickness or
        as a direct result of accidental injury:
16

17          • You are receiving Appropriate Care and Treatment
              and complying with the requirements of such
              treatment; and
18          • You are unable to earn:
19              • During the [180 day] Elimination Period
                  [during which no benefits are paid] and the
20                next 24 months of Sickness or accidental
                  injury, more than 80% of Your Predisability
21                Earnings . . . .

22  Broadwater Decl. (Doc. 16-1) Ex. A, Administrative Record

23  (hereinafter cited as "Admin."), at 23.  The 180 day elimination

24  period is the 180 days after the onset of disability.  Admin.

25  21.  Unless a claimant is continuously disabled for 180 days, he

26  or she will not receive payments under the CHW Plan.

27  ///

28
                                    2

1   Plaintiff's claim was initially approved in April 2008 with

2   an initial payment date of December 16, 2007.  Admin. 769.  This

3   is because under the CHW Plan, the elimination period ran from

4   her last day of work in June 2007 through December 2007.

5   On October 15, 2007, CHW elected pursuant to 26 U.S.C.

6   § 410(d) ("§ 410(d)") to treat the CHW Plan as governed by and

7   subject to the provisions of the Employee Retirement Income

8   Security Act of 1974 ("ERISA").  The election was attached to

9   CHW's Internal Revenue Service ("IRS") Form 5500 for the 2006

10  plan year.

11  Plaintiff's complaint (Doc. #1) contains two state law

12  claims against Defendant for 1) Breach of the Duty of Good Faith

13  and Fair Dealing, and 2) Breach of Contract.  Defendant answered

14  the complaint and included counterclaims for 1) Equitable Relief

15  Under ERISA, 2) Declaratory Relief, 3) and Unjust Enrichment.

16  Defendant's motion for summary judgment only references

17  Plaintiff's claims, not Defendant's counterclaims.  Accordingly,

18  the only issue presently before the Court is whether or not

19  Defendant is entitled to judgment on Plaintiff's affirmative

20  claims.  This Court has jurisdiction pursuant to either 28

21  U.S.C. § 1331 if Defendant is correct that ERISA preempts

22  Plaintiff's state law claims or 28 U.S.C. § 1332 based on the

23  diversity of citizenship of the parties.

24

25                          OPINION

26  Legal Standard

27  Summary judgment is proper "if the pleadings, depositions,

28  answers to interrogatories, and admissions on file, together

3

1   with affidavits, if any, show that there is no genuine issue of

2   material fact and that the moving party is entitled to judgment

3   as a matter of law." Fed. R. Civ. P. 56(c). The purpose of

4   summary judgment "is to isolate and dispose of factually

5   unsupported claims or defenses." Celotex v. Catrett, 477 U.S.

6   317, 323-324 (1986).

7       The moving party bears the initial burden of demonstrating

8   the absence of a genuine issue of material fact for trial.

9   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

10   If the moving party meets its burden, the burden of production

11   then shifts so that "the non-moving party must set forth, by

12   affidavit or as otherwise provided in Rule 56, 'specific facts

13   showing that there is a genuine issue for trial.'" T.W.

14   Electrical Services, Inc. v. Pacific Electric Contractors Ass'n,

15   809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P.

16   56(e)). The Court must view the facts and draw inferences in

17   the manner most favorable to the non-moving party. United

18   States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[M]ere

19   disagreement or bald assertion that a genuine issue of material

20   fact exists will not preclude the grant of summary judgment".

21   Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

22       The mere existence of a scintilla of evidence in support of

23   the non-moving party's position is insufficient: "There must be

24   evidence on which the jury could reasonably find for [the non-

25   moving party]." Anderson, 477 U.S. at 252. This Court thus

26   applies to either a defendant's or plaintiff's motion for

27   summary judgment the same standard as for a motion for directed

28   verdict, which is "whether the evidence presents a sufficient

1  disagreement to require submission to a jury or whether it is so

2  one-sided that one party must prevail as a matter of law."  Id.

3  Discussion

4          1.   Applicability of the CHW Plan's 26 U.S.C.
              § 410(d) Waiver

5

6          For purposes of the present motion only, the parties agree

7  that the CHW Plan is a "church plan" as defined by 29 U.S.C.

8  § 1002(33)(A), and that church plans are generally exempt from

9  ERISA pursuant to 29 U.S.C. § 1003(b)(2).  The parties also

10 agree that under certain circumstances, an election made

11 pursuant to 26 U.S.C. § 410(d) permits a church plan to opt in

12 to the ERISA regulatory scheme.  It is undisputed that such an

13 election would operate along with ERISA's broad preemption

14 provision to bar state law claims such as Plaintiff's if they

15 relate to the CHW Plan.  See Ingersoll-Rand Co. v. McClendon,

16 498 U.S. 133, 139 (1990).

17         Defendant argues in support of this motion that the CHW

18 Plan operates under a valid election, that the election applies

19 to Plaintiff's benefits, and therefore ERISA is the only

20 authority that applies to this dispute.  Plaintiff, on the other

21 hand, argues that a church plan can only make an election

22 pursuant to § 410(d) if it is a pension plan, not a welfare

23 benefit plan like the CHW Plan at issue in this case.  Plaintiff

24 does concede that if the § 410(d) election is valid and

25 applicable to her claim, then ERISA preempts her state law

26 claims.  In order to determine what law applies to this motion,

27 the Court must first determine if a welfare benefit plan can

28 make an election pursuant to 26 U.S.C. § 410(d), and if so,

1  whether or not the CHW Plan made a valid election such that

2  ERISA applies to the parties' claims.

3              a.    Applicability of § 410(d) Elections to
                     Welfare Benefit Plans
4

5       Defendant contends that any church plan, whether it is

6  welfare, pension, or both, may elect to be governed by ERISA by

7  following the procedure in 26 U.S.C. § 410(d).  Defendant relies

8  on one case from the District of Maine, Catholic Charities of

9  Me., Inc. v. City of Portland, 304 F. Supp. 2d 77 (D. Me. 2004),

10 and a plain reading of the applicable statutes to support its

11 position.  Plaintiff responds that the Catholic Charities case

12 was wrongly decided, that the case is only persuasive authority,

13 and § 410(d) should be correctly read as only applying to

14 pension plans.  Plaintiff therefore contends that 29 U.S.C.

15 § 1003(b)(3) only authorizes a § 410(d) election for pension

16 plans, even if the statute does not explicitly limit the

17 election.

18      Neither the Ninth Circuit nor the Supreme Court has decided

19 whether or not a church welfare benefit plan can make a § 410(d)

20 election.  Accordingly, this is a matter of first impression

21 within this Circuit.  As the Plaintiff correctly points out, the

22 only authority squarely on point consists of the Catholic

23 Charities decision, which is not binding on this Court, and the

24 statutory text.  See Boyd v. Benton Cnty., 374 F.3d 773, 781

25 (9th Cir. 2004) (holding that only decisions of the Supreme

26 Court and Ninth Circuit constitute binding authority).

27      In construing the provisions of a statute, a court must

28 first look to the statute itself to see whether its language has

                                  6

1   a plain meaning.  <u>Satterfield v. Simon & Schuster, Inc.</u>, 569

2   F.3d 946, 951 (9th Cir. 2009) (citing <u>McDonald v. Sun Oil Co.</u>,

3   548 F.3d 774, 780 (9th Cir. 2008)).  If the statutory language

4   is unambiguous, the inquiry ends and the court applies the

5   statute as it is written.  <u>Id.</u>

6        29 U.S.C. § 1003(b)(2) is located within the "General

7   Provisions" subtitle of ERISA.  It states, "The provisions of

8   this subchapter shall not apply to any employee benefit plan if

9   . . . such plan is a church plan (as defined in section 1002(33)

10  of this title) with respect to which no election has been made

11  under section 410(d) of Title 26 . . . ."  29 U.S.C.

12  § 1003(b)(2).  That section is certainly plain – church plans

13  are not governed by ERISA unless they make a § 410(d) election.

14  26 U.S.C. § 410(d) is located within a part of the Internal

15  Revenue Code ("IRC") titled, "Pension, Profit-Sharing, Stock

16  Bonus Plans, Etc."  That section provides, "If the church . . .

17  makes an election under this subsection [pursuant to

18  regulation], then the provisions of this title relating to

19  participation, vesting, funding, etc. . . . shall apply to such

20  church plan as if such provisions did not contain an exclusion

21  for church plans."  There are two possible points of ambiguity

22  in § 410(d).  First, it is located within a section of the IRC

23  that seems to apply only to deferred compensation plans.

24  Second, it contains an enumeration concluded by a necessarily

25  ambiguous "etc."  It is these potential ambiguities that

26  Plaintiff relies on to argue that Congress only wished to allow

27  pension plans to make a § 410(d) election.

28

1   This Court is not persuaded by Plaintiff's argument.

2   First, the IRC defines exactly what a church plan is for its

3   purposes.  A church plan is one whose "principal purpose or

4   function . . . is the administration or funding of a plan or

5   program for the provision of retirement benefit <u>or welfare</u>

6   <u>benefits, or both</u> . . . ."  26 U.S.C. § 414(e)(3)(a) (emphasis

7   added).  Section 410(d) is only ambiguous when analyzed without

8   the definitions also provided in the IRC.  The relevant

9   regulations adopted by the Treasury Department support this

10  interpretation.  26 C.F.R. § 1.410(d)-1 states that any church

11  plan can make a § 410(d) election.  The regulation refers to the

12  definition in 26 U.S.C. § 414(e), which includes welfare benefit

13  plans.  Second, the operative statutory section for the present

14  motion is 26 U.S.C. § 1003(b)(2), which contains no ambiguity.

15  That section simply states that any church employee benefit plan

16  that chooses to make a § 410(d) election is thereafter governed

17  by ERISA.  Since ERISA clearly applies to pension and welfare

18  benefit plans, there is no principled basis for excluding

19  welfare plans from § 1003(b)(2).  The Court is required to

20  presume that Congress meant what it said in § 1003(b)(2), and it

21  is improper to seek out ambiguities in order to change the plain

22  meaning of a statute.  <u>Satterfield</u>, 569 F.3d at 951.

23  Plaintiff's remaining arguments are equally unpersuasive.

24  Plaintiff argues that Congress only made the exception for

25  pension plans because it wanted them to be able to opt-in to

26  oversight by the Secretary of the Treasury and be eligible for

27  federal pension insurance.  Plaintiff contends that no such

28  exception is necessary for welfare plans because the states

1  generally regulate the insurance companies that provide employee

2  welfare benefits.  Plaintiff's argument ignores the whole point

3  of ERISA, which was to provide a comprehensive federal scheme to

4  regulate employee benefit plans, including welfare benefit

5  plans.  If Plaintiff's position were correct, then Congress

6  would have only included pension plans in ERISA generally, and

7  no provisions at all related to welfare benefit plans.

8      For the foregoing reasons, it is the finding of this Court

9  that ERISA applies to church welfare benefit plans that make a

10 valid election pursuant to 26 U.S.C. § 410(d).

11             b.   Validity of the CHW Plans § 410(d) Election

12     Having determined that a church welfare benefit plan can

13 make an election under § 410(d) to opt in to ERISA's regulatory

14 scheme, the next issue is whether or not the CHW Plan made such

15 an election.  Defendant argues that the CHW Plan made a § 410(d)

16 election by attaching an "ERISA Election" to its 5500 Form for

17 plan year 2006.  Defendant argues that the election is

18 irrevocable under 26 U.S.C. § 410(d), and it is therefore still

19 in effect.  Plaintiff responds, citing 26 C.F.R. § 1.410(d)-

20 1(c)(2), that the election is properly made by attaching it to a

21 form required under 26 U.S.C. § 6058, but the CHW Plan made the

22 election improperly through attachment to a Form 5500.

23 Plaintiff alternatively argues that even if an election was

24 made, it was deficient because the CHW Plan, by its terms, is

25 subject to change and the plan is therefore revocable in

26 violation of § 410(d).

27     Plaintiff's position relies on the lack of an attachment to

28 a Form 6058, but it is impossible for the CHW Plan to file a

1   Form 6058 because such a form does not exist.  The proper form

2   filed pursuant to the requirements in 26 U.S.C. § 6058 is

3   Internal Revenue Service Form 5500.  26 C.F.R. § 301.6058-1(a).

4   The unrebutted evidence before the Court is that the CHW Plan

5   made a § 410(d) election through attachment to its 2006 plan

6   year Form 5500 filing.  Zelenak Decl. ¶ 4, Ex. A.  Plaintiff's

7   argument related to the CHW Plan's ability to change at any time

8   is also unavailing.  Plaintiff takes the position that once an

9   election is made under § 410(d), plan terms are irrevocable and

10  unable to change.  Plaintiff cites no authority for this

11  position, and the clear language of § 410(d) indicates that only

12  the election itself is irrevocable.  The section does not

13  mention and therefore does not apply to a plan's terms.

14      Based on the unrebutted evidence before the Court, there is

15  no genuine dispute as to whether or not the CHW Plan made a

16  § 410(d) election.  The election attached to the 2006 Form 5500

17  satisfies 26 U.S.C. § 410(d) and the CHW Plan is therefore

18  governed by ERISA.

19          c.   Applicability of § 410(d) Election to
                 Plaintiff's Claims
20

21      Finally, Plaintiff argues that the § 410(d) election does

22  not apply to her claim because it arose before the election was

23  made.  It is undisputed that Plaintiff became disabled on June

24  19, 2007, and that the § 410(d) election was executed on October

25  15, 2007.  The parties agree that under the terms of the plan,

26  Plaintiff was not entitled to benefits until a 180 exclusion

27  period expired on December 16, 2007.  Defendant does not argue

28  that a § 410(d) election applies retroactively, but argues that

1   the election applies because Plaintiff was not due any payments

2   until after the election took effect.  Defendant takes the

3   position that in order for any rights to accrue under the CHW

4   Plan, Plaintiff had to be receiving benefit payments.  Plaintiff

5   takes the position that the claim arose, at the latest, when

6   Plaintiff became disabled on June 19, 2007.  Plaintiff argues

7   that it would be unfair to allow Defendant to change the law

8   applicable to her claim during the elimination period by filing

9   an election.

10      Plaintiff relies on Geter v. St. Joseph Healthcare Sys.,

11   Inc., 575 F. Supp. 2d 1244 (D.N.M. 2008), to support her

12   position.  Geter dealt with a § 410(d) election that was made

13   after the claimant was receiving benefits.  Id. at 1249.  The

14   court rejected the plan's argument that the § 410(d) election

15   applied, even though the plan was permitted to retroactively

16   file tax forms for years prior to the claimant's disability.

17   Id. at 1251.  The Geter court reasoned that the plain language

18   of the applicable statute, 29 U.S.C. § 1003, does not allow

19   retroactive ERISA preemption.  Id. at 1250.  Further, the court

20   pointed out that permitting such preemption would be anomalous

21   because the plan would benefit from ERISA's preemption provision

22   for years that it was not compelled to comply with any of

23   ERISA's mandatory reporting, disclosure, and fiduciary

24   requirements.  Id.

25      This Court agrees with the Geter court's holding.  The

26   plain text of 29 U.S.C. § 1003(b)(2) states that a church plan

27   is exempt from ERISA until it makes a § 410(d) election.  There

28   is no reference to retroactive ERISA coverage, and no basis for

1   inferring it.  Disability claims arising before the election are

2   therefore not governed by ERISA, and claims arising after the

3   election are.  The remaining issue for purposes of the present

4   summary judgment motion is therefore whether or not Plaintiff's

5   claim began when she became disabled or when she began to

6   receive benefit payments at the end of the 180 day elimination

7   period.

8        Plaintiff relies heavily on the terms of the CHW Plan

9   itself to support its position.  Plaintiff points out that the

10  CHW Plan defines "disability" to include the elimination period.

11  Admin. 23.  Plaintiff also points out that once a person is

12  disabled, their benefits under the CHW Plan remain unchanged

13  even if the insurance policy ends or is amended.  Admin. 36, 41.

14  Based on the language of the Plan, Plaintiff essentially argues

15  there is a claim that accrues when the insured becomes disabled

16  and a separate plan benefit that begins to accrue at the end of

17  the elimination period.  While benefits require a valid claim, a

18  valid claim does not necessarily lead to benefit payments

19  because the 180 day elimination period may not be satisfied.

20  Other terms of the CHW Plan support Plaintiff's position.  For

21  instance, an initial claim is generally supposed to be filed

22  within 90 days of a loss, not when a person becomes eligible to

23  receive benefits.  Admin. 47.  Legal suits related to the CHW

24  Plan are able to be filed as soon as 60 days of when the proof

25  of a claim is filed, not when benefits begin to accrue.  Admin.

26  48.

27       Defendant's position is "that the Election took effect

28  before [P]laintiff ever had a claim, because she had no claim

12

1    unless she was 'disabled' under the Plan for at least 180 days.

2    . . .." Reply, at 16.  That position, however, is not based on

3    any legal authority and it contradicts the terms of the CHW

4    Plan.  The CHW Plan clearly describes a situation where a claim

5    accrues at the point of disability, and further provides that

6    benefits begin to pay at the end of the 180 day elimination

7    period.  Disability under the CHW Plan includes the 180 day

8    elimination period.  Admin. 23 ("Disabled or Disability means

9    that, due to Sickness or as a direct result of accidental injury

10   . . . You are unable to earn during the Elimination Period and

11   the next 24 months of Sickness or accidental injury . . . .")

12   Based on the CHW Plan's definition of disability, it is clear

13   that disability occurs when the covered person is unable to

14   earn, not at the end of the elimination period.  The contention

15   that a § 410(d) election applies to a claim for which the

16   underlying disability has already started is inconsistent with

17   the terms of the plan that guarantee coverage once a person

18   becomes disabled, even if the policy expires or changes.  The

19   only operative date that the terms of the CHW Plan contemplate

20   for purposes of claim accrual is the date of onset of

21   disability.

22        Due to the lack of applicable legal authority and evidence

23   supporting Defendant's position that the § 410(d) election

24   should apply to Plaintiff's claim, judgment on this issue in

25   Defendant's favor is denied.  The remainder of Defendant's

26   motion assumes that ERISA is binding on Plaintiff's claim.

27   Since the Court has found otherwise, and Defendant has not

28   produced authority, evidence, or argument showing that it is

13

1   entitled to judgment on Plaintiff's state law claims on their

2   merits, the remainder of the motion is also denied.

3

4                        PAGE LIMIT SANCTIONS

5        Defendant's Reply Brief (Doc. #23) is twelve pages long in

6   violation of this Court's Order Re Page Limits (Doc. #5-2).

7   Accordingly, Counsel for Defendant is ordered to pay a $100

8   sanction ($50 per page) to the Court within ten days of the date

9   of this Order.

10

11                              ORDER

12       For the foregoing reasons Defendant's Motion for Summary

13  Judgment is DENIED. Defendant is to pay a $100 sanction within

14  ten days.

15       IT IS SO ORDERED.

16  Dated: March 27, 2013                _____

17                                        JOHN A. MENDEZ,
                                          UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28