UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELA ROBINSON, | No. 2:12-cv-1373 JAM AC |
| Plaintiff, | |
| v. | ORDER |
| METROPOLITAN LIFE INS. CO., | |
| Defendant. | |

On July 17, 2013, the court held a hearing on plaintiff's May 30, 2013 motion to compel. Daniel Glass appeared for plaintiff. Rebecca Hull appeared for defendant. On review of the parties' joint discovery statement, on hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.   Facts Underlying Litigation

Plaintiff was employed at St. Joseph's Hospital ("SJH") in Stockton, California, a hospital owned and operated by Catholic Healthcare West ("CHW"), a "Qualified Catholic Organization" pursuant to the IRS. Plaintiff claims she became disabled as a result of complications arising from a gastric bypass surgery she underwent in January 2006. When plaintiff applied for disability benefits, the CHW Health and Benefit Plan ("the Plan") contained language that it was

governed by the Employee Retirement Income Security Act ("ERISA").[1] Defendant Metropolitan Life Insurance Company ("MetLife") paid plaintiff disability benefits from the Plan from November 2007 through August 2010. After August 2010, MetLife stopped paying benefits. This action arises from defendant's decision to stop these payments.

B. <u>Procedural Background</u>

Plaintiff filed suit on May 21, 2012 on claims of breach of the duty of good faith and fair dealing and breach of contract. On receipt of the parties' September 5, 2012 joint status report, the Honorable John A. Mendez issued a minute order directing the parties to brief the question of whether plaintiff's claim is subject to ERISA rather than state law. Defendant claimed ERISA applied whereas plaintiff asserted that the Plan was a "church plan" that is exempt from ERISA. Defendant filed a motion for summary judgment on this issue on January 23, 2013.

During the pendency of that motion, plaintiff propounded discovery. These discovery requests, which plaintiff intended to use to oppose defendant's motion for summary judgment, were directed to defendant's position regarding the applicability of ERISA to the church plan. Defendant refused to respond to or comply with these requests on the ground that it believed this matter is covered by ERISA and thus the scope of discovery is limited. Plaintiff filed a motion to compel on January 30, 2013.

On March 27, 2013, Judge Mendez issued an order denying defendant's motion for summary judgment. ECF No. 30. There, Judge Mendez held the following: (1) the Plan is a church plan that is generally exempt from ERISA; (2) however, ERISA applies to church plans that make a valid election under 26 U.S.C. § 410(d) to opt in to the ERISA regulatory scheme; (3) the Plan made a valid § 410(d) election in 2007 and therefore is governed by ERISA; (4) but plaintiff's disability predates the effective date of the § 410(d) election and, since the election is not retroactive, plaintiff's claims are not governed by ERISA.

---

[1] ERISA is a federal law that sets minimum standards for pension plans in private industry. ERISA requires plans to provide participants with information about the plan, including information about plan features and funding; sets minimum standards for participation, vesting, benefit accrual and funding; requires accountability of plan fiduciaries; and gives participants the right to sue for benefits and breaches of fiduciary duty.

2

Based on plaintiff's representation that the discovery sought was directed to the then-pending motion for summary judgment and based on Judge Mendez's holding that ERISA does not apply to plaintiff's claims in this action, the undersigned denied plaintiff's January 30, 2013 motion to compel.  ECF No. 33.

C.      Discovery Dispute

On May 30, 2013, plaintiff filed the instant motion to compel defendant to respond to interrogatories and to produce documents.  ECF No. 34.  In dispute are defendant's responses to Special Interrogatory Nos. 1, 6, and 8, and Requests for Production Nos. 3, 4, 6, and 7.  This discovery is directed to determining why MetLife handled plaintiff's claim under ERISA.

Based on the representations of the parties in the joint discovery statement and at the July 17, 2013 hearing on plaintiff's motion to compel, the following dates are relevant to the analysis herein:

- In 1996 and 2001, two judges from the Eastern District of California issued rulings in separate cases finding that the CHW Health and Benefit Plan was a "church plan" that was exempt from ERISA.
- In 2002, the CHW Plan documents were amended to include language that ERISA applied to the Plan.  At the time and at all times prior, Met Life was not the Plan Administrator.
- On December 31, 2004, MetLife first became involved in the Plan when it issued a Group Term Life and Accident Health Insurance Policy, No. 114178-1-G, to CHW.  This insurance policy did not include a long term disability ("LTD") benefits plan.
- On January 1, 2007, MetLife added an ERISA-based LTD policy to the Plan coverage it provided to CHW.
- On October 15, 2007, CHW made a formal election to be covered by ERISA.
- Plaintiff submitted a claim for LTD benefits to CHW on April 18, 2008.

The crux of plaintiff's position is that the discovery sought will help explain how and why defendant issued its ERISA-based policy to an ERISA-exempt "church plan" almost ten months before CHW formally elected to be governed by ERISA.  Plaintiff also seeks discovery related to how or why the Plan was amended in 2002 to reflect that it was covered by ERISA.

3

Plaintiff argues that nothing changed between 2001, when CHW was found to be exempt from ERISA, and 2007, when CHW formally elected to be governed by ERISA. Yet in 2002, the Plan documents were changed to indicate that ERISA applied, and in January 2007 MetLife sold an ERISA-based policy to CHW. In light of this timeline, and because application of ERISA to disability claims allegedly has adverse effects on claimants, plaintiff contends that her bad faith claim would be supported by evidence that CHW represented to MetLife on its application for insurance that it was an ERISA-exempt "church plan" and that MetLife issued an ERISA-based LTD policy anyway. Conversely, if CHW represented that it was not a "church plan" at any time after 2001 and before October 15, 2007, then CHW should be a party to this action since it breached the fiduciary duty it owed to its 35,500 participants.

Defendant counters that how or why MetLife understood that ERISA applied to plaintiff's claim has already been answered months ago: MetLife administered the LTD benefits under ERISA for the simple reason that it was provided with Plan documents saying that the Plan operated under ERISA.

## LEGAL STANDARDS

All discovery is subject to the limitations imposed by Federal Rule of Civil Procedure 26. In defining the scope and limits of discovery, Rule 26(b)(1) permits discovery on matters relevant to the parties' claims and defenses. "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to discovery of admissible evidence." Id.

Rule 26(b)(2)(C)(iii) requires a court to limit discovery that is otherwise allowed by the rule, if the court determines that the burden of the proposed discovery outweighs its likely benefit, considering the needs of the case or the importance of the discovery in resolving the issues. Rule 26 also gives district courts broad latitude to limit the extent of discovery to protect a party or person from annoyance, embarrassment, oppression, undue burden or other improper purposes. Fed. R. Civ. P. 26(c)(1), 6(g)(1)(B)(ii).

////

DISCUSSION

A. <u>Interrogatories</u>

    1. <u>The Interrogatories at Issue</u>

        *Interrogatory No. 1*: Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

        *Interrogatory No. 6*: State the name of the person, or persons, affiliated with the Catholic Healthcare West Health and Benefit Plan who represented to MetLife, at any time over the past 10 years, that the Catholic Healthcare West Health and Benefit Plan was subject to the rules of [sic] regulations of ERISA.

        *Interrogatory No. 8*: State the name, address and telephone number of the person, persons, and/or entity which first sold Group Policy No. 114178-1-G to Catholic Healthcare West.

    2. <u>Analysis</u>

        a. <u>Verified Responses</u>

First, plaintiff claims generally that he has not received verified responses to the interrogatories and now seeks an order directing defendant to identify who prepared the responses. Plaintiff asserts that, even if MetLife's lawyers are responsible for "manufacturing" discovery responses, plaintiff is entitled to verified responses so that she will have the right, and opportunity, to depose the persons who "manufactured" these responses in order to determine their basis, if any.

Defendant counters that counsel prepared the objections, not any fact witnesses, and therefore identification and verification were unnecessary.

The law is well-settled that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5); Schwarzer, Tashima & Wagstaffe, Fed. Civ. Proc. Before Trial § 11:1772 (2013) ("No verification is required where the response consists *solely* of one or more objections. In such cases, the reason for the objection must be stated, and the objection must be *signed by the attorney*.") (emphasis in original). To the extent that defendant's objections to any interrogatories are not signed by an attorney, defendant shall correct this mistake immediately.

However, it is also well-settled that "[o]bjecting to an entire set of interrogatories is rarely

5

1 proper. Responses usually consist of a *mixture* of answers and objections and are signed by the
2 attorney and verified by the responding party." Schwarzer, Tashima & Wagstaffe, supra, §
3 11:1772 (emphasis in original). It is unclear whether defendant objected to *all* of plaintiff's
4 interrogatories or only those at issue here. While that matter is not before the undersigned now,
5 the court will note in passing that, to the extent defendant's objections are based on its former
6 position regarding the unavailability of discovery due to the applicability of ERISA, that
7 objection has now been overruled by Judge Mendez's order.

        b.        Identification of CHW Representative(s)

9     Plaintiff next seeks further responses from MetLife in order to determine why MetLife
10 issued an ERISA-based policy to CHW ten months before CHW made a formal election to be
11 governed by ERISA. Specifically, plaintiff asks for the identification of CHW representatives
12 who, at any time over the last ten years, asserted that ERISA applies to the Plan.

13     Defendant argues that it applied ERISA to LTD benefits claims (including plaintiff's
14 claim) because the Plan documents themselves have stated since 2002 that ERISA applied.
15 CHW, whether correctly or incorrectly, plainly believed that the Plan was subject to ERISA.
16 MetLife has also stated that it would be impossible to identify a specific person from CHW who
17 may have mentioned to a MetLife employee that the Plan documents provide that the Plan is
18 subject to ERISA. Even if they could specify a person, this information would be irrelevant
19 because the documents themselves have stated since 2002 that ERISA is the governing body of
20 law.

21     On consideration of the parties' arguments, the court will deny plaintiff's motion as to the
22 identification of CHW representatives. Plaintiff's position is that this information is relevant to
23 determine how and why MetLife sold an ERISA-based plan to CHW in January 2007, months
24 before CHW's formal October 2007 election. MetLife, however, has already responded that it
25 sold an ERISA-based policy to CHW because the Plan itself has stated since 2002 – more than
26 two years before MetLife first issued an insurance policy to CHW – that it is governed by ERISA.
27 Moreover, assuming arguendo that the precise information plaintiff seeks is the identity of the
28 CHW representative(s) who represented to MetLife *prior to* issuance of the 2007 LTD policy that

the Plan was subject to ERISA, the court finds that the interrogatory as worded is overbroad both in time and scope in that it seeks the identities of *all* CHW representatives who asserted that the Plan is subject to ERISA "at any time over the past 10 years."

Furthermore, based on the parties' joint discovery statement, it appears that they also read Interrogatory No. 6 as seeking the identification of CHW representative(s) who completed the insurance application, which is unsigned. See Joint Disc. Statement 14:4-9; Glass Decl. Ex. D, ECF No. 35 at 26-85. At the hearing on plaintiff's motion, counsel for MetLife represented that a signed application has not been located. Accordingly, MetLife shall be directed to search its records again and, if after a thorough search a signed application has still not been located, then a MetLife representative shall state so in a verified response.

        c.        Identification of MetLife Representative(s)

Interrogatory No. 8 asks MetLife for the identification of the person(s) who or entity that first sold Group Policy No. 114178-1-G to CHW. The parties repeat their arguments, as set forth supra. Because the court finds that the identification of the person(s) who or entity that first sold the Group Policy to CHW could lead to the discovery of admissible evidence and because defendant has failed to show how locating this information is unreasonably burdensome or oppressive, defendant will be directed to identify this individual(s) or entity.

B.      Requests for Production

      1.      The Requests

> *Request No. 3*: Please produce any and all applications for long term disability insurance presented to MetLife Insurance Company by Catholic Healthcare West from 2006 through and including the present.
>
> *Request No. 4*: Please produce any and all materials of any kind, including but not limited to, documents, communications, e-mails and/or applications submitted by any person or entity, which were relied upon by MetLife, to underwrite and/or issue Group policy No. 114178-1-G to Catholic Healthcare West at any time from 1993 to the present.
>
> *Request No. 6*: Please produce any and all documents in your possession, custody and/or control which refer or relate to information known to MetLife when it sold Group Policy No. 114178-1-G to Catholic Healthcare West, that the Catholic Healthcare West Health and Benefit Plan was a "church plan" as

that term is defined in 29 U.S.C. sec. 1002(33).

*Request No. 7*: Please produce any and all documents in your possession, custody and/or control which refer or relate to the underwriting and sale of MetLife Group Policy No. 114178-1-G to Catholic Healthcare West.

2. <u>Analysis</u>

Plaintiff claims the documents she seeks are relevant to the issues previously identified and that the requests are narrowly-tailored. Plaintiff accuses MetLife of failing to provide documentation on the LTD plan, but instead providing documentation regarding plaintiff's Life Insurance and Accidental Death and Dismemberment Insurance Policy. Plaintiff also asserts that defendant has refused to produce the remaining requested documents.

In opposition, defendant argues that the policy information that it provided to plaintiff is CHW's only application for the MetLife policy. MetLife has explained to plaintiff that (1) no signed copy of the application has been located, and (2) the LTD insurance was added to the existing policy effective as of January 2007, through an amendment to the policy – there was no application specifically for insurance for the LTD coverage. The policy that was produced to plaintiff was the one she requested by policy number – she received the application for that policy number and also the amendment adding the LTD coverage to that policy. Defendant claims it has now provided plaintiff with the MetLife policy, the application for it, the amendment adding LTD coverage as of 2007, the schedule of exhibits, and the insurance certificate applicable to her employee group. Defendant also provided plaintiff with the Plan documents dating back to 2002. But as to that part of the request that seeks underwriting documents related to this policy, MetLife objects that such materials are confidential financial records.

On review, the court finds MetLife's response to Request No. 3 to be adequate. Additionally, the court finds Request Nos. 4 and 7 to be overbroad both in time and scope. But as to Request No. 6, insofar as plaintiff is seeking information that goes to what MetLife knew about the Plan's status as a "church plan" before issuing an ERISA-based policy, the court finds this information to be relevant and this request to be narrowly-tailored. Therefore, defendant will be directed to provide a supplemental response to this request within fourteen days from the date of

this order.

C.      Depositions

Although there are no presently scheduled depositions, plaintiff expresses her desire to schedule the depositions of MetLife representatives, but claims she cannot do so because MetLife is withholding information from her.  While plaintiff did once serve a Rule 30(b)(6) deposition notice on MetLife, that notice was quashed for failure to give reasonable notice.  See Order Denying Mot. Compel April 5, 2013, ECF No. 33 at 4-5.  Plaintiff now seeks an order directing defendant to provide a list of each person who had a substantial role in handling plaintiff's claims.

Defendant argues that this matter is prematurely before the court since plaintiff has not served any proper deposition notices. As to plaintiff's argument that MetLife is stonewalling, MetLife asserts that plaintiff has the claim record, and can therefore identify individuals to depose, including those who handled and ultimately denied her claim.  Defendant's point is well-taken.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that plaintiff's May 30, 2013 motion to compel (ECF No. 34) is granted in part and denied in part as set forth more fully above.  Defendant shall comply with this order to the extent further action is required within fourteen (14) days from the date of this order.

DATED: July 18, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;robi1373.mtc2